# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF WISCONSIN

PAUL ANDRESS,

Plaintiff,

v.

Case No. 15-CV-423-JPS

DAUBERT LAW FIRM LLC and
MICHAEL A STUELAND,

Defendants.

ORDER

The plaintiff, Paul Andress, proceeding *pro se*, filed his complaint in this action on April 9, 2015, and paid the filing fee. (Docket #1). Mr. Andress sued Daubert Law Firm LLC ("Daubert") and Michael Stueland, a "legal [r]epresentative" of Daubert (the Court will refer to Daubert and Mr. Stueland collectively as "the defendants"). (Docket #4 ¶¶ 5–8). Mr. Andress claims that the defendants violated the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692, *et seq.*, and the debt collection provisions of the Wisconsin Consumer Act ("WCA"), Wis. Stat. § 427.101, *et seq.* (Docket #4 ¶¶ 17–65).

After the defendants appeared, they filed a motion to dismiss Mr. Andress' complaint (Docket #12); that motion is now fully briefed (Docket #13, #24, #26) and before the Court for a decision.

1.      BACKGROUND

The Court begins by describing the background of this case, beginning with the state court action that underlies this case; then discussing the allegations in Mr. Andress' allegations; and finally describing the defendants' arguments in favor of their motion to dismiss.

## 1.1 Underlying State Court Action

This case's roots extend back to September 20, 2011, when Mr. Andress obtained a $33,120.25 loan from RBS Citizens, N.A. ("RBS"), for the purchase of a truck. (Docket #14 ¶ 3; Docket #14, Ex. 1 at 3–4).[1] Alleging that Mr. Andress stopped making payments on the loan, RBS filed a complaint against him in Washington County Circuit Court ("the state court"). (Docket #14, Ex. 1). Mr. Stueland signed that complaint on behalf of Daubert, as attorney for RBS. (Docket #14, Ex. 1 at 2).

Several weeks later, RBS (acting through the defendants) filed an affidavit of service, indicating that Mr. Andress received service of the complaint on February 27, 2014. (Docket #14, Ex. 2).

---

[1] The defendants have moved to dismiss this action for lack of subject matter jurisdiction, pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure, arguing that the *Rooker-Feldman* doctrine applies to prevent the Court from exercising jurisdiction. (Docket #13 at 2 (citing *Lance v. Dennis*, 546 U.S. 459, 460 (2006); *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 284 (2005); *Dist. of Columbia Court of Appeals v. Feldman*, 460 U.S. 462 (1983); *Rooker v. Fid. Trust Co.*, 263 U.S. 413 (1923))). Because the defendants' motion is one to dismiss for lack of jurisdiction pursuant to Rule 12(b)(1), the Court "may properly look beyond the allegations of the complaint and view whatever evidence has been submitted on the issue to determine whether in fact subject matter jurisdiction exists." *Capitol Leasing Co. v. F.D.I.C.*, 999 F.2d 188, 191 (7th Cir. 1993) (quoting *Grafon Corp. v. Hausermann*, 602 F.2d 781, 783 (7th Cir. 1979)). *See also United Phosphorous, Ltd. v. Angus Chem. Co.*, 322 F.3d 942, 946 (7th Cir. 2003) ("if the complaint is formally sufficient but the contention is that there is in fact no subject matter jurisdiction, the movant may use affidavits and other materials to support the motion"), *overruled on other grounds by Minn-Chem, Inc. v. Agrium, Inc.*, 683 F.3d 845 (7th Cir. 2012). Thus, insofar as it is deciding the jurisdictional issue under Rule 12(b)(1), the Court will look to the evidence that the defendants have submitted in support of their motion (Docket #14, #15).

Case 2:15-cv-00423-JPS   Filed 11/13/15   Page 2 of 24   Document 28

Mr. Andress did not timely answer the complaint. (*See* Docket #14, Ex. 5). Instead, two days after the deadline for filing an answer, he sent the state court a letter and affidavit asserting that he had never received service of the complaint. (Docket #14, Ex. 3).

Notwithstanding that letter and affidavit, RBS (acting through the defendants) moved for default judgment, and the state court granted that motion; accordingly, on April 9, 2014, it entered default judgment against Mr. Andress in the amount of $32,019.34. (Docket #14, Exs. 4, 5).

Five days later, Mr. Andress filed two documents with the state court, both of which challenged the judgment against him. (Docket #14, Exs. 6, 7). In the first document, titled a "Motion for Summary Judgment," Mr. Andress asserted that the state court lacked jurisdiction to render the judgment against him because he had never received service of the complaint. (Docket #14, Ex. 6). In the second document, Mr. Andress asserted several "Motion[s] to Dismiss" based on additional arguments, including:

(1) that the state court lacked jurisdiction to render judgment against Mr. Andress because he is "a sovereign American Citizen and therefore, legislative statutes used by the federal and state governments do not apply to [him]" (Docket #14, Ex. 7 at 1);

(2) Mr. Andress had already paid the debt in full (Docket #14, Ex. 7 at 1–2);

(3) RBS had previously released Mr. Andress from the debt (Docket #14, Ex. 7 at 2);

(4) RBS committed fraud on the state court by not apprising it of Mr. Andress' previous payment of and release from the debt (Docket #14, Ex. 7 at 2–3) or RBS's sale of the debt to a third party (Docket #14, Ex. 7 at 3);

Case 2:15-cv-00423-JPS   Filed 11/13/15   Page 3 of 24   Document 28

(5)     the lawsuit was a "sham" in light of the fact that "the debt had been satisfied 'without recourse'" (Docket #14, Ex. 7 at 3–4); and

(6)     that service of process was insufficient (Docket #14, Ex. 7 at 4).

While the two documents were captioned as motions for summary judgment and to dismiss, respectively, it appears that both actually sought to have the state court reconsider its entry of default judgment against Mr. Andress. (*See* Docket #14, Exs. 6, 7).

Whatever relief those two documents sought, though, the state court never acted on them (*see* Docket #15, Ex. 1); so, approximately two months later, Mr. Andress filed a "Motion to Reopen" his case (Docket #14, Ex. 8). In that motion, Mr. Andress again asserted that he "was never served the complaint due to insufficiency of service of process," and that, if the state court were to reopen the case, he would "succeed because the lien was released and the debt cleared by RBS…." (Docket #14, Ex. 8).

On July 1, 2014, the state court denied Mr. Andress' Motion to Reopen. (Docket #15, Ex. 1, Entry #23). Mr. Andress did not file any further motions seeking relief from the judgment against him in the state court action (*see* Docket #15, Ex. 1), so as far as this Court is concerned, the judgment against him remains valid and enforceable.

And, indeed, the defendants (acting as counsel for RBS) have attempted to enforce the judgment against Mr. Andress. (*See, e.g.*, Docket #14, Exs. 9, 10). To do so, they initiated two separate garnishments in the state

court[2]—one filed on December 8, 2014 (Docket #14, Ex. 9; Docket #15, Ex. 1, Entry #24, #25, #26) and the other filed on April 1, 2015 (Docket #14, Ex. 10; Docket #15, Ex. 1, Entry #27, #28, #29). The defendants served notice of both garnishments on Mr. Andress and his employer. (Docket #14, Exs. 9, 10; Docket #14 ¶¶ 12–13).

### 1.2 Mr. Andress' Allegations in this Lawsuit

All of this activity prompted Mr. Andress to file the suit at hand: he argues that Daubert's and Mr. Stueland's actions violated the FDCPA and

---

[2]Magistrate Judge Nancy Joseph, of this district, recently considered a case that is very similar to this one, *Gonzales v. Kohn Law Firm, S.C.*, No. 13-CV-168, 2015 WL 5794157 (E.D. Wis. Oct. 2, 2015). In that case, she provided a very good overview of Wisconsin's garnishment procedures:

> The Wisconsin procedure for filing a garnishment starts when a judgment creditor files a "garnishment notice" with the clerk of courts. Wis. Stat. § 812.35(1). Upon the receipt of the notice and the payment of the fee, the clerk of courts issues two garnishment forms for each garnishee. Wis. Stat. § 812.35(2). The creditor then must serve the debtor and the garnishee. Wis. Stat. § 812.35(3). The contents of the garnishment notice and the garnishment form are prescribed by statute. Wis. Stat. §§ 812.44(2) and (3). The garnishment form contains directions the garnishee must follow, including, upon being served, whether it is likely to owe the debtor earnings and what to do if the debtor sends the garnishee an answer. Wis. Stat. § 812.44(3). If the debtor does submit an answer, the garnishee must send a copy of the answer to the creditor; if the answer claims a complete exemption or defense, the garnishee must not withhold earnings to pay the creditor until receiving a court order to do so. *Id.*

Gonzales v. Kohn Law Firm, S.C., No. 13-CV-168, 2015 WL 5794157, at *5 (E.D. Wis. Oct. 2, 2015) (footnote omitted).

WCA. (*See* Docket #4 ¶¶ 11–65). Mr. Andress' complaint[3] is confusing, but in substance seems to posit the following five violations:

(1)     the defendants did not properly serve Mr. Andress (*see, e.g.*, Docket #4 ¶¶ 11–12, 30(1));

(2)     the defendants should not have filed suit against Mr. Andress, because they lacked evidence to substantiate the alleged debt and/or acted upon a cursory review of the evidence (*see, e.g.*, Docket #4 ¶¶ 15, 18–19, 21, 24, 26–29, 30(2)–38, 42–47, 55[4]));

(3)     the defendants made various misrepresentations to the state court, including improperly naming RBS as the "true identity of the real party in interest," despite RBS having been fully compensated for the debt through insurance or securitization (*see, e.g.*, Docket #4 ¶¶ 14, 23, 39–40);

(4)     the defendants called Mr. Andress' home and employer, despite Mr. Andress' instruction that they not do so (*see, e.g.*, Docket #4 ¶ 23c); and

(5)     Mr. Stueland called him at various points, during which he discussed Mr. Andress' debt and "completely de-humanized [him] by yelling, screaming and intimidating [him]" (Docket #4, ¶¶ 13, 62–64).

Mr. Andress alleges that the defendants intended these purported violations to "harass, oppress, [and] abuse" him and have caused him "substantial harm" in various ways, thus entitling him to damages under the FDCPA and WCA. (Docket #4 ¶¶ 20–21; *see also* Docket #4 ¶¶ 23a–23b, 56–59). He also

_____

[3]Mr. Andress filed an amended complaint on July 28, 2015 (Docket #4), which superseded his original complaint (Docket #1). Because nothing in the original complaint is relevant to this order, the Court will refer to the amended complaint simply as "the complaint" for the balance of this order.

[4]Paragraph 55 of Mr. Andress' complaint alleges that the defendants engaged in various false or deceptive practices, but the only *factual* allegation (as opposed to legal conclusions) contained in it relates to the alleged falsity of the evidence in the state court action.

"demands that all of the garnishment of [his] earnings be returned to him." (Docket #4, Prayer for Relief (j)).

### 1.3 The Defendants' Motion to Dismiss

The defendants moved to dismiss this case. (Docket #12).

Primarily, they argue that the Court must dismiss the case pursuant to Rule 12(b)(1) for lack of subject matter jurisdiction, because the *Rooker-Feldman* doctrine prevents this Court from reviewing the state court's judgment. (*See, e.g.*, Docket #13 at 5–10). In this regard, the defendants argue that Mr. Andress' complaint attacks the underlying state court judgment, itself, as that judgment constitutes the source of Mr. Andress' alleged injury. (*See, e.g.*, Docket #13 at 5–6 (citing *Simmons v. Gillespie*, 712 F.3d 1041, 1043 (7th Cir. 2013); *Arnold v. KJD Real Estate, LLC*, 752 F.3d 700, 705 (7th Cir. 2014)).

Secondarily, the defendants argue that certain portions of the complaint should be dismissed under Rules 12(b)(6) and 12(b)(5). The defendants argue that the Court should dismiss Mr. Andress' WCA claims under Rule 12(b)(6) for failure to state a claim, because the WCA does not apply to consumer transactions in excess of $25,000.00. (Docket #13 at 10–11 (citing Wis. Stat. § 421.202(6))). The defendants argue that the Court should dismiss Mr. Andress' claims against Mr. Stueland, individually, pursuant to Rule 12(b)(5), because Mr. Andress did not properly serve his complaint upon Mr. Stueland. (Docket #13 at 11–12).

Mr. Andress did not timely respond to the defendants' motion; however, after a reminder from the Court and an extension of time, he filed his response brief on October 16, 2015. (Docket #19, #23, #24). The defendants filed their reply on October 30, 2015 (Docket #26).

Thus, the defendants' motion to dismiss is fully briefed and the Court will now decide it.

2.      ANALYSIS OF DEFENDANTS' MOTION TO DISMISS PURSUANT TO RULE 12(b)(1)

The Court begins its analysis by discussing the defendants' motion to dismiss insofar as that motion seeks dismissal based upon Rule 12(b)(1).

2.1     Rule 12(b)(1) Standard

As already noted, the defendants have moved to dismiss this action pursuant to Rule 12(b)(1), arguing that the Court lacks subject matter jurisdiction. (Docket #12). In reviewing a motion to dismiss "[u]nder Rule 12(b)(1), 'the district court must accept as true all material allegations of the complaint, drawing all reasonable inferences therefrom in the plaintiff's favor," *Remijas v. Neiman Marcus Group, LLC*, 794 F.3d 688, 691 (quoting *Reid L. v. Ill. State Bd. of Educ.*, 358 F.3d 511, 515 (7th Cir. 2004)), unless there is a factual dispute that impacts the analysis, *see Lee v. City of Chicago*, 330 F.3d 456, 468 (7th Cir. 2003) (citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992)). In the case of a factual dispute, the plaintiff bears the burden of proving by a preponderance of the evidence that subject matter jurisdiction exists. *See, e.g.*, *Lee*, 330 F.3d at 468 (citing *Lujan*, 504 U.S. at 561 in support of proposition that plaintiff bears the burden of establishing standing); *Kathrein v. City of Evanston, Ill.*, 752 F.3d 680, 690 (7th Cir. 2014) (citing *Lee*, 330 F.3d at 468, and *Lujan*, 504 U.S. at 561, for the same proposition). Finally, as the Court has already discussed in Footnote 1, *supra*, in deciding a Rule 12(b)(1) motion to dismiss, the Court may look to evidence outside the pleadings. *See, e.g.*, *Capitol Leasing*, 999 F.2d at 191 (quoting *Grafon*, 602 F.2d at 783); *United Phosphorous*, 322 F.3d at 946.

### 2.2 The *Rooker-Feldman* Doctrine

#### 2.2.1 The *Rooker-Feldman* Doctrine, Generally

Generally, the *Rooker-Feldman* doctrine "precludes a United States district court from exercising subject-matter jurisdiction" over "cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments." *Exxon Mobil*, 544 U.S. at 284, 291. The Supreme Court has described the doctrine as "narrow," only to be applied in "limited circumstances." *Id.* The doctrine is rooted in 28 U.S.C. § 1257, which "vests authority to review a state court's judgment solely in [the Supreme] Court." *Exxon Mobil*, 544 U.S. at 292 (citing *Feldman*, 460 U.S. at 476; *Atlantic Coast Line R. Co. v. Locomotive Eng'rs*, 398 U.S. 281, 286 (1970); *Rooker*, 263 U.S. at 416).

#### 2.2.2 The *Rooker-Feldman* Doctrine, as Applied to FDCPA Claims Relating to State Court Judgments and Garnishment Orders

The Seventh Circuit has applied the doctrine in several cases that, like this one, involve FDCPA claims that relate to state court judgments and garnishment orders.

Most recently, in *Harold v. Steel*, the Seventh Circuit held that the *Rooker-Feldman* doctrine barred a federal suit attacking a state court's garnishment order on FDCPA grounds. 773 F.3d 884 (7th Cir. 2014). In that case, an Indiana small claims court entered a judgment against the plaintiff. *Id.* at 885. Nearly twenty years later, the creditor in that small claims action (who would later become the defendant in the federal action), asked to garnish the plaintiff's wages. *Id.* The small claims court entered a garnishment order. *Id.* The plaintiff moved to vacate that order, but the small

claims court denied his motion. *Id.* Rather than appealing the small claims court's denial, the plaintiff filed a federal suit, claiming that the defendant creditor and his law firm had violated the FDCPA by making false statements regarding the identity of the defendant creditor. *Id.* The district court dismissed the federal suit as barred by the *Rooker-Feldman* doctrine. *Harold*, 773 F.3d at 885. The Seventh Circuit affirmed, holding that the garnishment order was a state court judgment, entitled to the protection of the *Rooker-Feldman* doctrine. *Harold*, 773 F.3d at 885–87. Just recently, Magistrate Judge Joseph applied *Harold*'s holding to bar an FDCPA challenge to a Wisconsin garnishment order.[5] *Gonzales*, 2015 WL 5794157, at *7.

In reaching its decision in *Harold*, the Seventh Circuit cited two cases that also apply to this case: *Epps v. Creditnet, Inc.*, 320 F.3d 756 (7th Cir. 2003) and *Kelley v. Med-1 Solutions, LLC*, 548 F.3d 600 (7th Cir. 2008). The *Epps* court, in 2003, held "that the *Rooker-Feldman* doctrine bars federal suits seeking to recover on a theory that a debt collector made false statements during litigation." *Harold*, 773 F.3d at 885 (citing *Epps*, 320 F.3d 756). The

---

[5]Magistrate Judge Joseph pointed out that Wisconsin federal courts have reached conflicting conclusions on this issue. *Gonzales*, 2015 WL 5794157, at *5–*6 (citing *Jung v. Cottonwood Fin. Wisconsin, LLC*, No. 14-CV-241, 2015 106227 (W.D. Wis. Jan. 7, 2015) (finding attack of Wisconsin garnsihment order barred by *Rooker-Feldman*); *Whitehead v. Discover Bank*, No. 14-CV-261, 2015 WL 4668758 (E.D. Wis. Aug. 7, 2015) (finding *Rooker-Feldman* inapplicable to garnishment order)). The Court can add two more cases—*Johnson v. Daubert Law Firm LLC*, No. 14-CV-1420, 2015 WL 4645194 (E.D. Wis. Aug. 4, 2015) and *Kobilka v. Cottonwood Fin. Wis., LLC*, 2015 WL 1137471 (W.D. Wis. Mar. 12, 2015)—to the list of Wisconsin district court cases applying the *Rooker-Feldman* doctrine to FDCPA attacks on Wisconsin garnishment orders. And, ultimately, it seems clear that *Harold* controls on that question, requiring application of the *Rooker-Feldman* doctrine to Wisconsin garnishment orders. *See Harold*, 773 F.3d at 885–87; *Gonzales*, 2015 WL 5794157, at *7 (applying *Harold*).

*Harold* court acknowledged the plaintiff's argument (and the real possibility) that the facts in *Epps* were distinguishable from the facts in *Harold. Harold*, 773 F.3d at 885 (citing *Epps*, 320 F.3d 756). But the *Harold* court found that distinguishability irrelevant in light of *Kelley*, which in 2008[6] "applied the approach of *Epps* to a claim under the [FDCPA]." *Harold*, 773 F.3d at 885 (citing *Kelley*, 548 F.3d 600).

In several unpublished decisions that post-date *Kelley*, the Seventh Circuit has applied *Rooker-Feldman* to prevent FDCPA-based attacks on state court judgments. In *Calhoun v. Citi Mortgage, Inc.*, the Seventh Circuit affirmed a district court's *Rooker-Feldman*-based dismissal of FDCPA claims that attacked a mortgage servicer's foreclosure sale of property. 580 F. App'x 484, 485 (7th Cir. 2014). The *Calhoun* court held, in relevant part, that "[t]o the extent that [the plaintiff] wants his loan to be modified or the foreclosure overturned, *Rooker-Feldman* bars his claims because he is attacking the state foreclosure judgment." *Id.* at 486. In *Sheikhani v. Wells Fargo Bank* ("*Sheikhani I*"), the Seventh Circuit affirmed a district court's *Rooker-Feldman*-based dismissal of FDCPA claims that attacked a state foreclosure judgment. *Sheikhani I*, 526 Fed. App'x 705 (7th Cir. 2013). In doing so, the *Sheikhani I* court rejected the plaintiff's argument that the defendants had "so far succeeded in corrupting the state judicial process" that the *Rooker-Feldman* doctrine would not apply in light of *Nesses v. Shepard*, 68 F.3d 1003, 1005 (7th Cir. 1995). The Seventh Circuit stated:

---

[6]It is also important to note that the *Kelley* decision post-dates *Exxon Mobil*, which the Supreme Court decided in 2005 and which stands as the most substantive recent refinement of the *Rooker-Feldman* doctrine. *See Harold*, 773 F.3d at 885 (rejecting the plaintiff's argument that *Exxon Mobil* undermined the holding in *Epps*).

> *Nesses* and cases following it clarify the limits of
> *Rooker–Feldman*, but those limits do not revive Sheikhani's case.
> A claim that seeks to redress an injury that preceded a
> state-court judgment is not barred by the doctrine. *Golden v.
> Helen Sigman & Associates*, 611 F.3d 356, 362 (7th Cir. 2010);
> *Long v. Shorebank Development Corp.*, 182 F.3d 548, 555 (7th Cir.
> 1999). Claims also are not barred if the state court imposed an
> insurmountable obstacle to adjudication, for example, through
> a conspiracy among the judge and state-court adversaries to
> corrupt the litigation process. *See Nesses*, 68 F.3d at 1005;
> *Loubser v. Thacker*, 440 F.3d 439, 441–42 (7th Cir. 2006). Nor is a
> claim barred if a state law prevented the plaintiff from raising
> it in state court. *See Long*, 182 F.3d at 560. But Sheikhani's case
> presents none of these scenarios. The injury he complains of…
> flows from the foreclosure judgment itself. He has not alleged
> that the foreclosure proceedings were corrupted; in fact, he
> stressed in his brief in opposition to the motion to dismiss that
> he was not questioning the integrity of those proceedings. And
> no state law prevented a challenge in the foreclosure
> proceedings to the validity of the assignment to Wells Fargo.
> *See OneWest Bank, FSB v. Hawthorne*, 2013 IL App (5th) 110475,
> 369 Ill.Dec. 71, 985 N.E.2d 1057 (2013). The district court's
> dismissal thus was proper regardless of any fraud Wells Fargo
> may have committed.

*Sheikhani v. Wells Fargo Bank*, 526 F. App'x 705, 706-07 (7th Cir. 2013). The plaintiff's wife later brought a separate suit, raising practically-identical claims, and the Seventh Circuit again applied the *Rooker-Feldman* doctrine to affirm the district court's dismissal of the wife's suit. *Sheikhani v. Wells Fargo Bank*, 577 F. App'x 610 (7th Cir. 2014) ("*Sheikhani II*"). In *Greenfield v. Deutsche Bank AG*, with very little analysis, the Seventh Circuit affirmed a district court's *Rooker-Feldman*-based dismissal of a plaintiff's claims that defendants had violated the FDCPA by their conduct in foreclosure proceedings. 569 F. App'x 455 (7th Cir. 2014).

While the above-discussed authority makes clear that the *Rooker-Feldman* doctrine prohibits FDCPA-based attacks on both state court judgments and garnishment orders, the Seventh Circuit has been sure to distinguish FDCPA-based complaints regarding efforts to *collect* on a judgment. *See, e.g.*, *Richardson v. Koch Law Firm, P.C.*, 768 F.3d 732, 733–34 (7th Cir. 2014); *Nora v. Residential Funding Co., LLC*, 543 F. App'x 601, 602 (7th Cir. 2013) (citing *Kelley*, 548 F.3d at 603–04; *Taylor v. Fed. Nat'l Mortgage Ass'n*, 374 F.3d 529, 533 (7th Cir. 2004)). In *Richardson*, the Seventh Circuit criticized the district court's dismissal of a plaintiff's FDCPA claim. 768 F.3d at 733–34. The plaintiff "maintained that the source of his injury [was] the [collector's] effort to *collect* the judgment, not the judgment's bare existence, but the district judge saw this as a semantic difference only and wrote that a claim 'inextricably intertwined' with a state court's judgment remains covered by *Rooker-Feldman*." *Id.* (emphasis in original). The Seventh Circuit criticized that reasoning: "We are skeptical about the wisdom of asking whether something is 'intertwined' ('inextricably' or extricably) with a state court's judgment." *Id.* at 734. That language from *Richardson* should give all district courts pause about finding that an FDCPA claim challenging collection efforts is so "inextricably intertwined" with the state court judgment so as to be barred by the *Rooker-Feldman* doctrine. The Seventh Circuit, in *Nora*, made a separate but similar point: "[d]istrict courts may…entertain claims of injuries that occurred before, *and* are independent of, the claim on which the state court rendered judgment." 543 F. App'x at 602 (citing *Kelley*, 548 F.3d at 603–04; *Taylor*, 374 F.3d at 533).

In sum, as best as the Court can tell from Seventh Circuit law, there are two separate boxes into which FDCPA claims like Mr. Andress' might fall. The first of those boxes includes claims that directly challenge state court judgments or garnishment orders. The *Rooker-Feldman* doctrine clearly bars such claims. *See, e.g.*, *Harold*, 773 F.3d at 885; *Kelley*, 548 F.3d 600; *Epps*, 320 F.3d 756. The second box includes claims that might *relate* to a state court judgment or garnishment order, but that actually challenge a defendant's efforts to collect on that judgment or order, *see Richardson*, 768 F.3d at 733–34, or that occurred before and existed independent of the judgment or order, *Nora*, 543 F. App'x at 602 (citing *Kelley*, 548 F.3d at 603–04; *Taylor*, 374 F.3d at 533). *See also Long v. Shorbank Dev. Corp.*, 182 F.3d 548, 556 (7th Cir. 1999) (where FDCPA claims did not challenge "propriety of the…[eviction] judgment," the *Rooker-Feldman* doctrine did not bar them); *Crawford v. Countrywide Home Loans, Inc.*, 647 F.3d 642, 645 (7th Cir. 2011) (even where claims might "involve questions related to those in the original state court proceedings," *Rooker-Feldman* does not necessarily apply).

### 2.3 Application of the *Rooker-Feldman* Doctrine to this Case

As the Court has already noted, Mr. Andress' complaint appears to name five separate classes of alleged violations:

(1) the defendants did not properly serve Mr. Andress (*see, e.g.*, Docket #4 ¶¶ 11–12, 30(1));

(2) the defendants should not have filed suit against Mr. Andress, because they lacked evidence to substantiate the alleged debt and/or acted upon a cursory review of the evidence (*see, e.g.*, Docket #4 ¶¶ 15, 18–19, 21, 24, 26–29, 30(2)–38, 42–47, 55[7]));

---

[7]Paragraph 55 purports that the defendants engaged in various false or deceptive practices, but the only *factual* allegation (as opposed to legal conclusions) contained in it relates to the alleged falsity of the evidence in the state court action.

(3) the defendants made various misrepresentations to the state court, including improperly naming RBS as the "true identity of the real party in interest," despite RBS having been fully compensated for the debt through insurance or securitization (*see, e.g.*, Docket #4 ¶¶ 14, 23, 39–40);

(4) the defendants called Mr. Andress' home and employer, despite Mr. Andress' instruction that they not do so (*see, e.g.*, Docket #4 ¶ 23c); and

(5) Mr. Stueland called him at various points, during which he discussed Mr. Andress' debt and "completely de-humanized [him] by yelling, screaming and intimidating [him]" (Docket #4, ¶¶ 13, 62–64).

### 2.3.1 The *Rooker-Feldman* Doctrine Bars Mr. Andress' Claims Insofar as They Relate to the First Three Classes of Violations

The first three of those classes of alleged violations—relating to service, lack of evidence, and misrepresentations—all clearly fall into the first box and the *Rooker-Feldman* doctrine bars them. Even assuming that the violations, in fact, occurred, this Court lacks subject matter jurisdiction to hear them, because they directly challenge the underlying state court judgment and/or garnishment orders.[8] Mr. Andress had the opportunity to challenge issues regarding service, lack of evidence, and misrepresentations before the Washington County Circuit Court, and if dissatisfied with the result in that court to appeal that court's judgment to the Wisconsin Court of Appeals and thereafter the Wisconsin Supreme Court. Instead, he filed this

---

[8]They appear to challenge the underlying state court judgment more than the garnishment orders, but Mr. Andress' complaint is unclear and requests the return of garnished wages, so he may be challenging both. The distinction is immaterial, though, because the *Rooker-Feldman* doctrine bars Mr. Andress' challenge of either.

federal suit, arguing that the judgment and garnishment orders rest upon the defendants' alleged FDCPA violations. Clearly, in light of the Court's discussion of the case law, the *Rooker-Feldman* doctrine applies to bar Mr. Andress' claims of FDCPA violations relating to service, lack of evidence, and misrepresentations.

That conclusion finds clear support from the Seventh Circuit's decision in *Nora*. In *Nora*, the Seventh Circuit held that the *Rooker-Feldman* doctrine barred the plaintiff's claim that the state court's judgment of foreclosure rested on a fraudulent assignment. 543 F. App'x at 602. After making a distinction between claims directly challenging a state court judgment (which the *Rooker-Feldman* doctrine would bar) and those that occurred before and are independent of a state court judgment (which the *Rooker-Feldman* doctrine would *not* bar), the Seventh Circuit held that the plaintiff's claims fell into the first category and thus were barred:

> Nora's allegations of fraud and conspiracy fit the mold of the general rule and are therefore barred. By alleging that the fraudulent assignment to Residential Funding allowed it to succeed in foreclosing on her property in state court, Nora is impermissibly asking a federal district court to review and reject the state court's judgment of foreclosure of her property. Nora replies that she is seeking damages under federal statutes, not just the return of her home. But a request for review of a state-court foreclosure decision that includes a claim for damages based on charges of defrauding the state court does not elude *Rooker–Feldman. See Taylor*, 374 F.3d at 534; *Wright v. Tackett*, 39 F.3d 155, 157–58 (7th Cir. 1994). Moreover, Nora had the opportunity to raise—and did raise—her fraud allegations in the state foreclosure proceeding, where the court rejected them. Only the Supreme Court can review the Wisconsin court's rejection of those allegations in entering its judgment of foreclosure. *See Gilbert v. Ill. State Bd. of Educ.*, 591 F.3d 896, 901–02 (7th Cir. 2010).

*Nora*, 543 F. App'x at 602. The facts in this case—at least as apply to Mr. Andress' claims regarding service, lack of evidence, or misrepresentations—are almost perfectly analogous. Just like the plaintiff in *Nora*, Mr. Andress argues that an underlying state court judgment (and garnishment orders) are based upon an improper foundation and seeks damages on that basis. But, as the *Nora* court held, the *Rooker-Feldman* doctrine still applies to bar that action.

Furthermore, even if Mr. Andress were making a more complex argument that there was some fundamental problem in the state court proceedings,[9] the Court would still find that the *Rooker-Feldman* doctrine bars his claims, similar to its operation in *Sheikhani I*. In that case, the Seventh Circuit held that a claim would "not [be] barred if the state court imposed an insurmountable obstacle to adjudication, for example through a conspiracy among the judge and state-court adversaries to corrupt the litigation process," or if "a state law prevented the plaintiff from raising it in state court." 526 F. App'x at 706–07 (citing *Nesses*, 68 F.3d at 1005; *Loubser*, 440 F.3d at 441–42; *Long*, 182 F.3d at 560). But, *Sheikhani I* plaintiff, the Seventh Circuit pointed out, had not alleged either scenario, so the *Rooker-Feldman* doctrine still barred his claims. 526 F. App'x at 706–07. The same is true here: while Mr. Andress alleges that the *defendants* engaged in various forms of misconduct, he has not alleged that the state court somehow corrupted the proceedings nor has he alleged that state law prevented him from raising any arguments before the state court. So the *Rooker-Feldman* doctrine applies to bar his FDCPA claims in this case, just as it applied in *Sheikhani I*.

---

[9]And, to be sure, he has never made this argument. The Court addresses it simply out of an abundance of caution.

Case 2:15-cv-00423-JPS   Filed 11/13/15   Page 17 of 24   Document 28

### 2.3.2 The *Rooker-Feldman* Doctrine Does Not Bar Mr. Andress' Claims Insofar as They Relate to the Last Two Classes of Violations

But that is not the end of the story, because the *Rooker-Feldman* doctrine *might not* bar his claims as they relate to the two remaining classes of alleged violations, relating to calls to his home/employer and alleged harassment, respectively. Both classes *could* exist without directly challenging the underlying state court judgment or garnishment order. The operative words in those sentences, of course, are "*might*" and "*could*": Mr. Andress' complaint is extremely unclear, but it seems that he may be alleging that the defendants attempted to collect their debt (either before the state court rendered it into a judgment or after) in an illegal manner. (*See, e.g.*, Docket #4 ¶¶ 13, 23c, 62–64). If that is the case, then he is not attacking the judgment itself, but rather the defendants' efforts to collect, and the *Rooker-Feldman* doctrine would not bar such claims. *See, e.g., Richardson*, 768 F.3d at 733–34; *Nora*, 543 F. App'x at 602 (citing *Kelley*, 548 F.3d at 603–04; *Taylor*, 374 F.3d at 533); *Long*, 182 F.3d at 556; *Crawford*, 647 F.3d at 645; *Gonzales*, 2015 WL 5794157, at *9–*10. Perhaps the defendants could argue that such claims are "inextricably intertwined" with the state court judgment, but the Seventh Circuit has expressly cautioned district courts against making that inquiry. *Richardson*, 768 F.3d at 734 ("[w]e are skeptical about the wisdom of asking whether something is 'intertwined' ('inextricably' or extricably) with a state court's judgment"). Thus, Mr. Andress *may* have viable claims remaining.

Unfortunately, to the extent that those claims exist, Mr. Andress has not adequately pled them. Rule 8(a)(2) requires "a short and plain statement of the claim showing that the pleader is entitled to relief." "Specific facts are unnecessary, but the complaint must give the defendant fair notice of what

the claim is and the grounds upon which it rests." *Huri v. Ofc. of the Chief Judge of the Circuit Court of Cook Cnty.*, No. 12-2217, 2015 WL 6388837, at *4 (7th Cir. Oct. 21, 2015) (citing *Olson v. Champaign Cnty.*, 784 F.3d 1093, 1098 (7th Cir. 2015); *Erickson v. Pardus*, 551 U.S. 89, 93 (2007); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). Here, Mr. Andress has not provided enough in the way of allegations to give the defendants fair notice of what his claims are and the grounds upon which they rest. (*See, e.g.*, Docket #4 ¶¶ 13, 23c, 62–64). Specifically, it is unclear from his complaint whether certain of the alleged harassing phone calls occurred before the judgment or after. (Docket #4 ¶¶ 13, 23c). As to others, it is unclear whether Mr. Andress is complaining that: (a) the defendants made calls that, in and of themselves, violated the FDCPA (the *Rooker-Feldman* doctrine would not bar this sort of claim); or, alternatively, (b) that the calls somehow misled him, thus making the judgment or garnishment orders inappropriate (the *Rooker-Feldman* doctrine would bar this sort of claim). (*See, e.g.*, Docket #4 ¶¶ 62–64).

And, without knowing the nature of Mr. Andress' claims, the defendants cannot adequately defend against them. That is particularly important in this case, because—even assuming that Mr. Andress is making FDCPA claims that the *Rooker-Feldman* doctrine does not bar, as more fully described above—there may be other substantive reasons why his alleged facts fail to state a claim, and upon which the defendants may move to dismiss.

### 2.4 Conclusion as to Defendants' Motion to Dismiss Pursuant to Rule 12(b)(1)

For the reasons discussed above, it is clear that the Court must dismiss the heart of Mr. Andress' claims for lack of subject matter jurisdiction in light of the *Rooker-Feldman* doctrine. Nearly all of Mr. Andress' complaint is

directed to attacking the underlying state court judgment and garnishment orders. The *Rooker-Feldman* doctrine clearly bars such an attack, so the Court is obliged to grant the defendants' motion to dismiss pursuant to Rule 12(b)(1), and dismiss Mr. Andress' complaint insofar as it makes such an attack.

But, as more fully discussed above, certain portions of Mr. Andress' complaint *might* be making viable FDCPA claims that are not directed at attacking the underlying state court judgment and garnishment orders; to the extent that Mr. Andress is making such claims, the Court is obliged to deny the defendants' motion to dismiss pursuant to Rule 12(b)(1).

Nonetheless, to the extent that Mr. Andress is attempting to make such permissible claims, his complaint does not satisfy Rule 8(a)'s requirements.

The Court is, therefore, obliged to dismiss the complaint in full, but give Mr. Andress leave to file an amended complaint. Mr. Andress *may not* reassert his claims that relate to the validity of the judgment, as the Court has determined that it lacks subject matter jurisdiction over those claims. However, Mr. Andress *may* reassert his claims that relate to the allegedly-illegal calls the defendants made to him. If Mr. Andress wishes to reassert those claims, he must file an amended complaint that satisfies the requirements of Rule 8(a)(2).[10] Once he has done so, the defendants will, of course, be permitted to move to dismiss that amended complaint.

---

[10]As the Court will discuss in the next section, Mr. Andress also may not reassert his WCA claims.

Case 2:15-cv-00423-JPS    Filed 11/13/15    Page 20 of 24    Document 28

3.      ANALYSIS OF THE DEFENDANTS' MOTION TO DISMISS
        PURSUANT TO RULES 12(b)(6) AND 12(b)(5)

While the Court has determined that it must dismiss Mr. Andress' complaint in its entirety for the reasons set forth above, it will also address the defendants' remaining arguments, because its resolution of the issues contained therein might further guide Mr. Andress in drafting an amended complaint.

3.1     The Court is Obliged to Dismiss Mr. Andress' WCA Claims
        With Prejudice, Pursuant to Rule 12(b)(6)

The defendants have moved to dismiss Mr. Andress' WCA claims pursuant to Rule 12(b)(6) for failure to state a claim upon which relief can be granted, arguing that the WCA expressly excludes from its protection transactions that exceed $25,000.00, such as Mr. Andress'. (Docket #13 at 10–11). In support, the defendants cite Wis. Stat. § 421.202. In pertinent part, Wis. Stat. § 421.202 explicitly excludes "[c]onsumer credit transactions in which the amount financed exceeds $25,000, motor vehicle consumer leases in which the total lease obligation exceeds $25,000 or other consumer transactions in which the case price exceeds $25,000." Wis. Stat. § 421.202(6). The defendants assert that this language applies directly to Mr. Andress' WCA claims so as to bar them.

The cited language appears to be directly on point, explicitly excluding from its protections Mr. Andress' transaction. His only argument to the contrary is that the Wisconsin legislature's "intent was not to give free rein for false and abusive tactics for claims exceeding $25,000." (Docket #24 at 6). No matter what the legislature intended, however, the plain language of the statute is clear, and it prohibits Mr. Andress' WCA claims. *See* Wis. Stat. § 421.202(6). *Accord Paulsen v. Blommer Peterman, S.C.*, No. 14-CV-106,

2015 WL 1486546, at *2 (W.D. Wis. March 31, 2015).

For this reason, the Court is obliged to dismiss Mr. Andress' WCA claims with prejudice. If he files an amended complaint, he is not permitted to reassert those claims.

### 3.2 While the Plaintiff's Service of His Amended Complaint Upon the Defendants Was Defective, that Failure Is Not Fatal to his Claims Against Mr. Stueland As a Whole

Finally, the Court must address the defendants' motion to dismiss Mr. Stueland pursuant to Rule 12(b)(5) for inadequate service of process. It certainly appears that Mr. Andress did not adequately serve his complaint upon Mr. Stueland, given that there is no indication that the receptionist at Mr. Stueland's office (with whom Mr. Andress' process server left copies of the summons and complaint) was able to accept service on Mr. Stueland's behalf. (Docket #10). Thus, service was insufficient. *See, e.g.*, Fed. R. Civ. P. 4(e)(2); Wis. Stat. § 801.11(1); *Gillen v. Kohn Law Firm, S.C.*, No. 13-CV-373, 2013 WL 6629034, *1 (W.D. Wis. Dec. 17, 2013) (citing *Schultz v. Schultz*, 436 F.2d 635, 638 (7th Cir. 1971); *Elkins v. Broome*, 213 F.R.D. 273, 275 (M.D.N.C. 2003); *Thompson v. Kerr*, 555 F. Supp. 1090 (S.D. Ohio 1982)); *Michalczyk v. WBAJ, Inc.*, No. 11-CV-504, 2011 WL 5326066, *2 (W.D. Wis. Nov. 3, 2011).

Nonetheless, the Court does not believe that Mr. Andress' service failure should prove fatal to his claims against Mr. Stueland in their entirety. As the Court has already mentioned, it is dismissing Mr. Andress' complaint in full but giving him leave to file an amended complaint. Thus, Mr. Andress' insufficient service on Mr. Stueland has not resulted in any prejudice, and the Court finds it best to allow Mr. Andress to properly serve summons and his amended complaint on Mr. Stueland. The Court will give Mr. Andress 30 days to do so. *See Gillen*, 2013 WL 6629034, at *1 (citing Fed. R. Civ. P. 4(m)

("If defendant is not served within 120 days after the complaint is filed, the court…must dismiss the action without prejudice against that defendant *or order that service be made within a specified time.*") (emphasis added); *Cardenas v. City of Chicago*, 646 F.3d 1001, 1005 (7th Cir. 2011) ("[T]he decision of whether to dismiss or extend the period for service is inherently discretionary."); *Koss Corp. v. Pilot Air Freight Corp.*, 242 F.R.D. 514 (E. D. Wis. 2007) ("Motions under Rule 12(b)(5) differ somewhat from the other motions authorized by Rule 12(b) in that they offer the district court a course of action—quashing the process—other than simply dismissing the claim when the defendant's objection is sustained.")).

4.    CONCLUSION

As more fully described above, the Court will grant in part and deny in part the defendants' motion to dismiss. The Court will dismiss Mr. Andress' complaint in its entirety, but give him (very limited) leave to file an amended complaint that complies with the Court's discussion above. He will have 30 days from the entry of this order to file his amended complaint. If Mr. Andress fails to timely file his amended complaint, the Court will dismiss this action. In the event that Mr. Andress elects to amend his complaint, he is advised that, because an amended complaint supersedes a prior complaint, any matters not set forth in the amended complaint are, in effect, withdrawn. *See Duda v. Bd. of Educ. of Franklin Park Pub. Sch. Dist. No. 84*, 133 F.3d 1054, 1056 (7th Cir. 1998). His amended complaint will become the operative complaint in this case once it is filed, and the defendants will be permitted to move to dismiss it if they wish.

Finally, the defendant must also, within 30 days of the entry of this order, perfect service of summons and his amended complaint on Mr. Stueland. If he fails to timely perfect service upon Mr. Stueland, the Court will dismiss any pending claims against Mr. Stueland.

Accordingly,

IT IS ORDERED that, as more fully described above, the defendants' motion to dismiss (Docket #12) be and the same is hereby GRANTED in part and DENIED in part. Mr. Andress' complaint (Docket #4) be and the same is hereby DISMISSED in its entirety, although the Court gives Mr. Andress leave to file an amended complaint that complies with the Court's discussion, above. If Mr. Andress wishes to file an amended complaint, he must do so within thirty (30) days of the entry of this order; failure to timely file an amended complaint will result in the dismissal of this action. Furthermore, within thirty (30) days of the entry of this order, Mr. Andress must perfect service upon Mr. Stueland; failure to timely do so will result in the dismissal of any claims against Mr. Stueland.

Dated at Milwaukee, Wisconsin, this 13th day of November, 2015.

BY THE COURT:

J.P. Stadtmueller
U.S. District Judge